## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**EDGAR DALE BEARDEN**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 3:05CV-86-DW**

**WILLIAM A. BEELER, JR., et al.**                                        **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Several motions are before the Court to be considered in this personal injury action. All of them in one fashion or another raise the question whether the law of Kentucky or that of Georgia governs the right of the intervening Plaintiffs to recover on a claim of subrogation for monies paid to the Plaintiff or on his behalf as a result of the underlying automobile accident that led to the present lawsuit. The Plaintiff and the Defendants have reached a settlement agreement of all claims between them. The Defendants and third-party Defendants likewise have settled. The sole remaining claim is the subrogation claim of the intervening Plaintiffs, who are the Plaintiff's employer and its claims administrator.

Plaintiff has requested leave to file a supplemental complaint for a declaration of rights that Georgia law, Georgia Code Annotated (Ga. Code Ann.) § 34-9-11.1(b), controls any subrogation rights that the Intervening Plaintiffs may have (DN 87). Plaintiff also has filed a motion to dismiss the settling Defendants based on Georgia law (DN 90). The Defendants have filed a separate motion to dismiss the complaint of the intervening Plaintiffs based on the same arguments (DN 91).

All of these motions rest on the proposition that when the employee of a Georgia corporation is paid Georgia Workers' Compensation benefits as part of an employment contract arising in Georgia, then Kentucky law, requires that Ga. Code Ann. § 34-9-11.1(b) apply to preclude

the intervening Plaintiffs from recovering unless they can establish that the plaintiff has been "made whole" as provided by Georgia case law.   The intervening Plaintiffs argue in response that Kentucky, as the site of the automobile accident, has an overriding interest in applying its own subrogation laws to preclude the Plaintiff from receiving an undeserved windfall given the substantial contacts with Kentucky (DN 92).   We begin consideration of these arguments with a brief review of the nature of the suit and its procedural history.

*Nature of the Suit*

The present lawsuit is the result of a chain reaction vehicle collision involving three tractor trailers traveling southbound in the left lane on Interstate 65 in Jefferson County, Kentucky, on January 23, 2003.  That evening, the Plaintiff, Edgar Bearden, a resident of Georgia, was driving a tractor trailer owned by the Intervening Plaintiff, CT Harris, Inc., a Georgia corporation that employed Bearden.  Bearden alleged in a complaint filed in state court in Kentucky that another truck driven by Defendant William Beeler, a resident of Marion, Indiana, and owned by CLM Freight Lines, an Indiana corporation, struck Bearden's truck from behind as the result of Beeler's negligence.  The accident resulted in Bearden's truck hitting another tractor-trailer and Bearden receiving severe injuries to his shoulder and leg.

Bearden filed suit against Beeler and CLM Freight Lines in the Circuit Court of Jefferson County, Kentucky, on January 20, 2005 (DN 1).  Beeler and CLM removed the suit to federal court, where they filed an answer denying any negligence on their part (DN 3).  Thereafter, CT Harris, the Plaintiff's self-insured employer, and Underwriters Safety and Claims, its claims administrator, intervened in the suit to assert a subrogation claim to recover medical expenses, lost

2

wage benefits and future medical expenses paid or to be paid on behalf of the injured Plaintiff.[1] (DN 11).

After CT Harris and Underwriters intervened as plaintiffs, Defendant Beeler filed a third-party complaint against the driver of a third tractor trailer, Mitchell Hulsey, and his employer Peak Freight Services (DN 19). Hulsey is a resident of Alabama and Peak Freight Services is an Alabama corporation. His vehicle was the lead vehicle in the collision and had stopped in the left lane of the interstate to permit a wrecker towing an automobile to enter from the median. Defendants alleged in their third-party complaint that Hulsey's negligence in the operation of his vehicle caused the accident (DN 17). Beeler and CLM also filed third-party complaints against Troy's Wrecker Service and Tony's Wrecker Service, alleging that Troy's and an unknown driver were negligently responsible for causing the accident (DN 18).

The parties consented pursuant to 28 U.S.C. 636(c) to proceed before the Magistrate Judge sitting as the District Court (DNs 37-41, 47). After a series of discovery-related disputes, all parties entered into extended settlement negotiations (DN 81). Beeler and CLM, as third-party Plaintiffs, were the first to settle their claims against third-party Defendants, Tony's Wrecker Service (DN 84) and Troy's Wrecker Service (DN 86). They then settled with third-party Defendant Mitchell Hulsey and Peak Freight Services (DN 94). Bearden settled all of his claims against Beeler and CLM pursuant to an agreement by which Bearden will receive $625,000. CT Harris and Underwriters Safety are not part of that agreement. Their claim for subrogation is the sole claim remaining in the lawsuit. The only question now is whether that claim will be resolved in

_____

[1] As of this date, CT Harris and Underwriters have paid over $100,000 in such benefits to the Plaintiff (DN 92, p. 2).

accordance with the laws of Georgia or those of Kentucky.

*Choice of Laws Analysis.*

The Court begins with an acknowledgment of the fundamental tenet that a federal court acting pursuant to its diversity jurisdiction must apply the choice of law rules of the forum state in which it sits to determine the appropriate law to be applied.  Klaxon Co. v. Stentor Elec. Manuf. Co., 313 U.S. 487 (1941); Wallace Hardware Co., Inc. v. Abrams, 223 F.3d 832, 831 (6th Cir. 2000).  Both parties agree with this well-established principle. Accordingly, the choice of law rules announced by the Kentucky courts must be applied.

The proclivity of Kentucky courts to apply Kentucky law whenever possible is well known.  Harris, 712 F.2d at 1071 ("Kentucky courts have apparently applied Kentucky substantive law whenever possible.") (citing Wessling v. Paris, 417 S.W.2d 259 (Ky. 1967); Arnett v. Thompson, 433 S.W.2d 109 (Ky. 1968)).  In Arnett, the Supreme Court of Kentucky upheld the application of Kentucky law in a suit between two Ohio residents who were involved in an automobile accident in Kentucky.  Arnett, 433 S.W.2d at 113.  In so doing, the Kentucky Supreme Court concluded that the conflict of law question should be determined not on the basis of a weighing of the interests of Ohio and Kentucky, but simply on the basis of whether Kentucky has enough contacts to justify applying its law.  Id.

Later, in Foster v. Leggett, 484 S.W.2d 827, 829 (Ky. 1972), the Kentucky Supreme Court rejected the notion that Arnett established a "most significant contacts" rule.  Foster, 484 S.W.2d at 829.  Instead, the Kentucky Supreme Court explained that when Kentucky has jurisdiction over the parties, its "primary responsibility is to follow its own substantive law.  The basic law is

4

the law of the forum, which should not be displaced without valid reasons." Id. Accordingly, Kentucky law will be applied so long as significant contacts with the forum exist, even if those contacts are not necessarily the most significant ones. Id. See, Adam v. J. B. Hunt Transport, Inc., 130 F.3d 219, 230-31 (6th Cir. 1997) (discussing Arnett and Foster).

A reader who casually examined Arnett, Foster and Adam might incorrectly conclude that whenever an automobile accident occurs in Kentucky, or when Kentucky citizens are involved in an automobile accident in another jurisdiction, Kentucky courts will inevitably apply Kentucky law if at all possible. Such a monolithic conclusion overlooks one extremely critical distinction - - the nature of the Kentucky law to be applied. All three decisions, Arnett, Foster and Adam, raise the question of whether Kentucky *tort* law would be applied to determine the rights of the parties.

For example, in Arnett the court was faced with the question of whether Kentucky tort law would apply when an Ohio married couple traveling together were injured in an automobile accident in Kentucky. Arnett, 433 S.W.2d at 114-15. The specific question was whether the injured Ohio wife could recover from her husband for her injuries. Ohio law would have precluded such a recovery based on the doctrine of inter-spousal immunity. Id. at 113. Kentucky law had no such bar to spousal recovery. Ultimately, the Kentucky Supreme Court in Arnett concluded that Kentucky had enough contacts to justify applying its tort law. Id. See also, Wessling v. Paris, 417 S.W.2d 259 (Ky. 1967) (abandoning the *lex loci* rule in favor of a substantial contacts test).

The legal issue in Foster also involved a question of tort law. In Foster, a fatal automobile accident occurred in Ohio. The deceased passenger was a resident of Kentucky. Although the defendant driver was an Ohio resident, he kept a rented room near his work in

5

Kentucky, most of his employment and social relationships were located in Kentucky, and the "fatal journey" began in Kentucky and was to have ended there. Foster, 44 S.W.2d at 830. Under these circumstances, the Kentucky Supreme Court concluded that Ohio's guest statute was not applicable in the action brought against the driver by the administratrix of the deceased passenger. Id. at 829.

The third decision, Adam, involved the question whether Kentucky or Ohio law would govern the wrongful death and personal injury action arising from an automobile accident that occurred in Kentucky where the injured plaintiffs were residents of Ohio. Faced with this choice of law question, the Sixth Circuit concluded pursuant to Foster and Arnett that the district court properly applied Kentucky tort law because the accident occurred in Kentucky. Adam, 130 F.3d at 230-31.

Here, the question to be resolved is not one of tort law, but rather is a question of contractual rights. The source of such rights is the employment contract between the injured Plaintiff, a Georgia resident, and his employer, a Georgia corporation. This employment contract is the genesis of the workers' compensation benefits paid to the Plaintiff. Accordingly, the Court must look elsewhere in the law of Kentucky to determine how the Kentucky courts would analyze a choice of law issue involving a matter of contract law, rather than tort law. Several Kentucky cases are helpful in answering this question.

The first of these cases is Lewis v. American Family Ins. Group, 555 S.W.2d 579 (Ky. 1977). In Lewis, an Indiana driver and passenger in a vehicle that was registered and insured in Indiana were involved in an accident in Kentucky with another vehicle driven by an uninsured Kentucky resident. Id. at 581. The injured Indiana plaintiffs filed suit in Kentucky against the uninsured Kentucky driver and their own insurer, American Family Insurance Group, which had

issued two insurance policies to the driver and his uncle, both of which included uninsured motorist coverage.  The question in <u>Lewis</u> was whether the law of Indiana or that of Kentucky would govern the question of uninsured motorist coverage.

The Kentucky Supreme Court concluded that under the circumstances where Indiana drivers of an Indiana registered automobile sought coverage under an Indiana-issued insurance policies for injuries sustained in Kentucky, the law of Indiana would apply to interpret the contract of insurance involved.  <u>Id</u>. at 582.  Accordingly, as one legal commentator has described <u>Lewis</u>, "the case does stand for the clear proposition (as to contract cases, at least) that Kentucky will not invariably apply its own law simply because it has judicial jurisdiction."  John R. Leathers, <u>Choice of Law in Kentucky</u>, 87 Ky. L. J., 583, 594 (Spring 1999).

A case similar to <u>Lewis</u> is <u>Owens v. Declark</u>, Case No. Civ.A94-264, 1995 WL 912492 (E.D. Ky. 1995), affirmed by <u>Owens v. State Farm Mutual Auto Ins. Co., Inc.</u>, 134 F.2d 372, 1998 WL 24995 (6th Cir. 1998) (unpublished disposition).  In <u>Owens</u>, an Indiana resident was injured in Kentucky in an automobile accident while a passenger in an automobile covered by an Indiana insurance policy.  Subsequently, the insurer and the injured passenger fell into a dispute over whether the policy's underinsured motorist coverage would apply.  Kentucky law would have found such coverage whereas Indiana law would not provide relief for the underinsured motorist insurance claim.  The district court concluded that Indiana law would apply based on <u>Lewis</u> and the Restatement Second of Conflicts of Laws.  <u>Id</u>.

On appeal, the Sixth Circuit agreed based upon <u>Lewis</u> and <u>Bonnlander v. Leader National Ins. Co.</u>, 949 S.W.2d 618 (Ky. App. 1996), stating, "We find that the district court properly held that Indiana, not Kentucky, law applies, because Kentucky was only the site of the accident.

The significant contacts in this case between Mr. and Mrs. Owens [the injured plaintiffs] and State Farm [their insurer] were in Indiana." Owens, 134 F.3d 372 at *2. As in Lewis, the Sixth Circuit concluded in Owens that Kentucky had no interest in such situation, contrary to Indiana, which in both cases was the only interested state.

The same result was reached in Hammer v. State Farm Mut. Automobile Ins. Co., 950 F. Supp. 192 (W.D. Ky. 1996) wherein the plaintiff driver, a resident of Indiana, was injured in an automobile accident in Kentucky involving an underinsured Kentucky motorist. Once again, the injured plaintiff was covered by Indiana policies of automobile insurance that included underinsured motorist benefits. Nevertheless, the driver argued that Kentucky law should govern her ability to recover under the underinsured motorist provisions of her two Indiana insurance policies as Kentucky law would have provided her higher benefits. The district court again chose to apply Indiana law citing Lewis and Owens for the proposition that Indiana was the only state that had any interest in the interpretation of the policies involved. Id. at 195. See also, State Farm Mut. Auto Ins. v. Hallgatha, No. 2003-CA-10877-MR, 2004 WL 2011326 (Ky. App. 2004).

The same conclusion must be reached with respect to the law of Georgia. While Kentucky undeniably is the situs of the unfortunate accident, the choice of law dilemma involves a fundamental question of contract law, rather than one of tort law. The payment of workers' compensation benefits in this case arose from a contract of employment between the Plaintiff and his employer. Plaintiff is a Georgia resident employed by a Georgia corporation pursuant to an employment contract executed in Georgia. Following the accident, Plaintiff's employer reported the incident to the Georgia State Board of Workers' Compensation (DN 87, Exh. 1). The State Board of Workers' Compensation in Georgia granted an award and ordered the Plaintiff's employer,

CT Harris, to pay temporary total disability benefits (DN 87, Exh. 2).

At no time has the Plaintiff pursued recovery under the Kentucky Workers' Compensation statutes, unlike the decision in Bryant v. Jericol Mining, Inc., 758 S.W.2d 45, 46-47 (Ky. App. 1988) in which a Virginia employee working for an uninsured Virginia employer was injured while working in Kentucky and sought to successfully recover benefits from the uninsured employers fund in Kentucky. Here, Bearden makes no attempt to avail himself of the protections of the Kentucky Workers' Compensation Act or the Jericol decision.

The Court concludes that the most analogous case to interpret Kentucky law under similar circumstances is the Sixth Circuit decision announced in Harris Corp. v. Comair Inc.,712 F.2d 1069 (6th Cir. 1983). The Harris decision involved an Ohio employee of a Texas employer who died in a Kentucky plane crash. The deceased widow received workman's compensation death benefits under the Ohio Workman's Compensation Act. Harris Corporation, the decedent's self-insured Texas employer, brought an action against the Kentucky airline seeking indemnification for benefits paid to the deceased Ohio employee's widow. The question arose in Harris as to whether the law of Ohio or Kentucky would govern the right of the employer to indemnification. The district court concluded that because Harris and the deceased entered into their employment agreement in Ohio, the laws of that state were implicitly incorporated into their agreement and therefore Ohio law would govern. Id. at 1072.

On appeal, the Sixth Circuit agreed. After noting that Kentucky courts have never considered the question "of which state law, in a conflict situation, should apply to claims arising under workman's compensation statutes, the court observed that "the question of allocation of rights under such [workman's compensation] laws is generally perceived as a contractual, or at least quasi-

contractual problem." Id. (citing R. LeFlar American Conflicts Law, ¶ 156 (Third Edition 1977)).

The Sixth Circuit continued that Kentucky has "embraced what is variously referred to as an interest

or contacts analysis." Id. Applying interest analysis to Harris's claim for indemnity for benefits

paid pursuant to Ohio's workman's compensation laws, the Sixth Circuit concluded:

> In all respects, Ohio has the most significant relationship to the
> parties and their dispute. The indemnification claim has its genesis
> in an Ohio-based employment relationship between two Ohio
> residents, which relationship, as the district court stated, constituted
> a 'single package of inter-related obligations and benefits.' Harris
> Corp., 510 F. Supp. at 1173. Included in the package was a self-
> insurance plan, elected by Harris and administered pursuant to the
> Ohio Workman's Compensation Act. In these circumstances, Ohio
> law must control. To argue otherwise is to confuse the question of
> negligence, unquestionably an issue to be resolved under the laws of
> Kentucky, with the question of the rights of the parties under a
> contract of employment.

Harris, 712 F.2d at 1072.

The Sixth Circuit ultimately observed its decision to apply Ohio law was in accord

with "the decisions of the majority of those courts which have considered this question." Id. at 1073

(citing 2 Larson, Workman's Compensation, Damage Suits, § 88.00 (Desk Ed. 1983) ("As to third-

party actions, if compensation has been paid in a foreign state and suit is brought against a third

party in the state of injury, the substantive rights of the employee ... and the employer are ordinarily

held governed by the law of the foreign state, although there is contra-authority.")

No "contra-authority," however, has been cited to this Court to persuade it that Harris

is not controlling. In fact, the intervening Plaintiffs acknowledge the factual similarity of Harris,

if not its legal analysis, in their response (DN 92, p. 2). This Court, nonetheless, finds that analysis

to be sound. As further indication of its correctness, the Court quotes from Professor Leathers'

article and his discussion of choice of law problems involving contractual rights:

> What Lewis, Hammer and Owens seem to indicate as a group is that disputes involving insurance coverage issued in other states will be governed by the law of other states.  While it is tempting to look to the fact patterns and wonder whether some Kentucky compensation oriented policy might not be served in some instances by applying Kentucky law, it must be kept in mind that the issue into which the courts are reaching is not directly a result of the underlying tort.  Rather, the issue arises from a contract now activated by the Kentucky accident.  There is not sufficient Kentucky connection in these cases to allow application of Kentucky law.  At the same time the results of these cases in no way detract from the observed tendency of Kentucky to apply its own law whenever it has sufficient contacts to do so.

Leathers, Choice of Law in Kentucky at 649-50.

The same is true here.  Nothing in the decision of this Court to apply Georgia law to resolve what is essentially a matter of contract detracts from the historic preference of Kentucky courts to apply Kentucky tort law to establish the substantive rights of the parties when an accident occurs in Kentucky.  When the rights at issue, however, arise from an employment contract executed in a foreign state between a foreign employer and foreign employee, and those individuals have invoked the workers' compensation laws of that foreign state, then Kentucky has no interest to assert under such circumstances.  Accordingly, the law of Georgia must be applied to determine the subrogation rights of the intervening Plaintiffs in this action.

### The Subrogation Law of Georgia.

The critical statute, as noted, is Ga. Code Ann. § 39-9-11.1(b), which provides as follows:

> (b) In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a

11

> subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery.  The employer or insurer may intervene in any action to protect and enforce such lien.  However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

Ga. Code Ann. § 34-9-11.1(b) (West 2006).

The language of the statute clearly provides that any subrogation action to recover disability benefits, death benefits and medical expenses may only be successfully maintained if the injured employee has been "fully and completely compensated ... for all economic and noneconomic losses incurred as a result of the injury." Id.  Under Georgia law, the trial court and not a jury, determines if a claimant has been fully and completely compensated. See, Canal Ins. Co. v. Liberty Mut. Ins. Co., 570 S.E.2d 60, 65 (Ga. App. 2002) ("The trial court and not the jury must determine if the employee has been fully and completely compensated by Workers' Compensation benefits and by a recovery from a third-party tortfeasor.") (citing Liberty Mut. Ins. Co. v. Johnson, 535 S.E.2d 511 (2000)).  The trial court must make this determination within the confines of § 34-9-11.1(b) and not within the meaning of general principles of tort law [as to defenses]." Id. (citing Homebuilder's Ass'n of Georgia v. Morris, 518 S.E.2d 194 (Ga. App. 1999)).

In fulfilling its duty, the trial court is to keep in mind that "subrogation, a doctrine originating in equity, is founded upon the dictates of refined justice.  Its basis is the doing of complete, essential and perfect justice between all parties, without regard to form, and its object is the prevention of injustice." Canal, 570 S.E.2d at 66.  Only if the trial court determines that the

12

employee has first been made whole does it have the authority to reduce the employee's general award, including personal injuries, to cover the subrogated lien. Id. (citing Powell v. Daniels Const. & Demolition, 501 S.E.2d 578 (Ga. App. 1998)).

The trial court may not consider the affirmative defenses of contributory/comparative negligence or assumption of the risk in determining whether or not the employee has been fully and completely compensated for his injuries, because the employee's total economic and noneconomic losses make up the full and complete compensation unreduced by such defenses under the Act. Id. (citing Homebuilder's Ass'n of Georgia, 518 S.E.2d at 194). Where no economic benefits have been paid, "neither the employer nor the insurer can assert a subrogation lien against noneconomic damages, *i.e*, pain and suffering." Id. (citing Hammond v. Lee, 536 S.E.2d 231 (Ga. App. 2000)).

This rule of complete compensation as a precondition to recovery on subrogation claims applies with equal force to insurers seeking recovery of medical payments as well as an employer's recovery of Workers' Compensation benefits. In Thurman v. State Farm Mut. Automobile Ins. Co., 598 S.E.2d 448, 450-51 (Ga. 2004), the Supreme Court of Georgia explained:

> Georgia's public policy [is] strongly supportive of the complete compensation rule: an insurer is prohibited from obtaining reimbursement for amounts paid under medical payments coverage unless and until the insured has been completely compensated for her loss. OCG § 33-24-56.1(b); Davis v. Kaiser Foundation, et al., 521 S.E.2d 815 (1999). The complete compensation rule set forth in OCG § 33-24-56.1(b) echoes the statutory limitation placed on the 1992 reinstatement of the subrogation lien in Workers' Compensation cases - - the recovery of the employer or its insurer pursuant to that lien is conditioned upon the injured employee having been "fully and completely compensated ... for all economic and noneconomic losses incurred as a result of the injury." OCG § 34-9-11.1(b). Consequently, when Georgia law is applicable, an injured party's medical insurer and the workers' compensation carrier of the injured party's employer are not permitted to seek reimbursement from the injured party unless and until the amount of the settlement received

13

by or the judgment awarded to the injured employee exceeds the
injured party's economic and noneconomic damages.

Id. at 450-51.  In this regard, the Georgia Court of Appeals has explained in Homebuilder's Ass'n,

518 S.E.2d at 196, that "Although the Workers' Compensation Act is in derogation of common law,

it is highly remedial in nature....  It must be construed liberally in favor of the claimant in order to

accomplish its beneficent purposes."  Id. (citing Subsequent Injury Trust Fund v. Lumley Drywall,

409 S.E.2d 251 (1991)).

Under Georgia law, the burden falls squarely upon the party seeking to recover by

way of subrogation to establish that the injured employee has been fully and completely

compensated.  See, Georgia Electric Membership Corp. v. Garnto, 597 S.E.2d 527, 529-30 (Ga.

2004).  Resolution of this issue is made by "comparing the sum of the Workers' Compensation

benefits paid by the intervenor [plaintiffs] and the amount of the employee's recovery in the third-

party action, to all economic and noneconomic losses caused by the injury."  Id. (citing City of

Warner Robbins v. Baker, 565 S.E.2d 919 (Ga. App. 2002).  Included in the employee's recovery

is the proceeds of any settlement.  International Maintenance Corp. v. Inland Paper, 569 S.E.2d 865

(Ga. App. 2002).  Georgia case law also makes clear that in determining whether an injured

employee has been fully compensated, the court looks to the amount actually received by the injured

employee after subtracting any attorney's fees and costs.  See, City of Warner Robbins, 565 S.E.2d

at 923 (court reduced $90,000 settlement by attorney's fees and costs to arrive at the $58,725.80

amount actually received by the injured plaintiff).

The case law discussed above clearly requires that the Court take evidence on the

question of whether Plaintiff Bearden has been fully and completely compensated as provided by

§34-9-11.1(b) and the case law that interprets it. Such evidence may be taken in the form of

14

affidavits, if agreeable to the parties; or, the Court can if necessary conduct a full evidentiary hearing on the matter. The Court shall schedule a telephonic conference by separate order so that the parties may discuss how to best proceed in view of the Court's memorandum opinion.

In the interim, the Court takes up the question of the status of Defendants William Beeler and CLM Freight Lines, both of whom have settled with the Plaintiff. Beeler and CLM have filed a motion to be dismissed with prejudice based on their $625,000 settlement with the Plaintiff (DN 90). Defendants also have filed a related motion to dismiss the intervening complaint filed by CT Harris and Underwriter's based on the argument that the Plaintiff has not been fully compensated by their payment of the $625,000 for pain and suffering (DN 91).

CT Harris and Underwriter's have filed a consolidated response in opposition to both motions (DN 93). They argue in their response that Beeler and CLM should not be dismissed "because dismissal of these parties would severely and detrimentally impair intervening plaintiff's rights as to any determination as to subrogation interests." (DN 93, p. 1). They also insist that dismissal of Beeler and CLM "would impair their rights of recovery against parties in this action under Kentucky law." Id. at p. 2. The intervenors, however, cite no decision which would give them a direct cause of action against the Defendants to recover on their subrogation claim. Georgia law is quite clear on this point.

Once a settlement has been reached in a suit where the right of the employer and its insurer to intervene to protect and enforce a lien for benefits paid to the employee is governed by Ga. Code Ann. § 34-9-11.1(b), that lien will attach to the recovery. In other words, the money in the hands of the injured employee is subject to the lien. Consequently, the employer cannot pursue a direct claim against a defendant or third-party defendant. The case on point is International

15

Maintenance Corp. v. Inland Paperboard & Packaging, Inc., 569 S.E.2d 865, 869 (Ga. App. 2002).

In International Maintenance, two intervenors seeking to recover on a subrogation claim took appeal from the dismissal of two defendants who had settled with the injured plaintiff in a personal injury suit.  The trial court had approved the dismissal of the defendants during the pendency of the suit.  On appeal from the dismissal of the settling defendants, the intervenors argued that the trial court was required to leave the defendants in the suit so that the intervenors could pursue their subrogation claim against them based on Georgia Membership Corp. v. Hi-Ranger, Inc., 563 S.E.2d 841 (Ga. 2002).  The Georgia Court of Appeals rejected this argument noting that in Hi-Ranger, the injured employee and his employer had filed suit jointly against the alleged responsible third party and were proceeding under subsection (c) of Ga. Code Ann. § 34-9-11.1, rather than subsection (b).

The Georgia Court of Appeals continued to explain that:

> [S]ubsection (b) gives the employer/insurer not the employee's cause of action but merely a right to intervene in the employee's lawsuit "to protect and enforce [its] lien."  Thus, the General Assembly, by choosing quite different language for the two subsections, seems to have intended to give the employer/insurer a broader opportunity to recover its payments when the employee does not file suit on his own, as provided in subsection (c), and more narrow opportunities for recovery when the employee takes the initiative and sues, as provided in subsection (b).

> When a settlement is reached, or a judgment is entered in a suit governed by Ga. Code Ann. § 34-9-11.1(b), the lien attaches to the recovery, "that is, to the money now in the hand of the injured employee."  Powell v. Daniels Construction & Demolition, 501 S.E.2d 578 (Ga. App. 1998).  After the employee has settled with the defendant and the lien has attached to the proceeds, there is no longer any purpose for intervention.  An employer/insurer cannot continue to pursue a claim against the defendant when the intervention was pursuant to subsection (b).

16

International Maintenance Corp., 569 S.E.2d at 869-70.  It therefore appears that Defendants Beeler and CLM are entitled to be dismissed from the lawsuit given their settlement with the Plaintiff who, unlike Hi-Ranger, proceeded to sue directly against the tortfeasors.  The same reasoning would appear to apply to any third-party defendants that have settled, as well.


*Conclusion*

The Court concludes based upon the choice of law provisions of Kentucky case law that the mere coincidence of the automobile collision in Kentucky does not give rise to an interest sufficient to justify the application of Kentucky law where the subrogation rights at issue arise under a Georgia contract of employment between a Georgia employer and an injured Georgia employee who has received workers' compensation benefits pursuant to an order of the Georgia State Board of Workers' Compensation.  Based on the Harris decision and the Kentucky decision in Lewis, Hammer and Owens, the Court concludes that the Georgia law of subrogation as contained in Ga. Code Ann. § 34-9-11.1(b) controls to determine the subrogation rights of the intervening Plaintiffs. Only if the intervening Plaintiffs prove that the Plaintiff has been fully and completely compensated may the intervenors recover on their subrogation claim.  Further, because the Defendants and third-party Defendants have fully settled their claims, the Georgia law discussed above entitles these parties to be dismissed from the lawsuit so that the intervening Plaintiffs may proceed against the settlement proceeds in the hands of the Plaintiff.  The Court shall enter a separate order to this effect that resolves all pending motions.


Copies to Counsel of Record

17